IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 26, 2010

## STATE OF TENNESSEE v. ROBERT THOMAS REED

**Appeal from the Circuit Court for Sevier County**
**No. 11398-11    Richard R. Vance, Judge**

_____

**No. E2009-00629-CCA-R3-CD Filed June 22, 2010**

_____

The Defendant, Robert Thomas Reed, was convicted of driving under the influence (DUI) (first offense), a Class A misdemeanor, and driving after having been declared a motor vehicle habitual offender (MVHO), a Class E felony. Following a sentencing hearing, the Defendant was sentenced as a Range I offender to two years with service of six months in the county jail and the balance to be served on probation for the MVHO conviction and a concurrent sentence of eleven months, twenty-nine days suspended to six months for the DUI conviction. On appeal, the Defendant challenges the sufficiency of the evidence that formed the basis of both convictions. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Edward Cantrell Miller, District Public Defender; and Amber D. Hass, Assistant Public Defender, attorneys for appellant, Robert Thomas Reed.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; James B. Dunn, District Attorney General; George C. Ioannides, Assistant District Attorney General, attorneys for appellee, State of Tennessee.

**OPINION**

Officer Blaine Lewis of the Sevier County Sheriff's Department testified that he received a call from the dispatcher on April 26, 2006 at 2:57 p.m. regarding an accident on

Birds Creek Road. He testified that he arrived at the location of the accident at 3:03 p.m. and that the Defendant's vehicle was off the right side of the road in a field. The Defendant was "at the car in the field" by himself. There were no other cars or people present. The road was wet from rain, but it was a "nice day" without adverse weather conditions.

Officer Lewis stated that when he approached the Defendant and started talking to him, he noticed that the Defendant's breath smelled like alcohol and that the Defendant was unsteady on his feet. The Defendant told Officer Lewis that he was hurt and that he had hit his left knee on the steering wheel. In response, Officer Lewis called for an ambulance. However, the Defendant refused medical attention.

Officer Lewis said that he did not ask the Defendant to perform any field sobriety tests because of the Defendant's injury. Also, the location of the accident "was not a safe place to perform field sobriety tests." Officer Lewis stated that he noticed an open beer can "in the center console of [the Defendant's] vehicle." When asked about the beer can, the Defendant told Officer Lewis that he had been drinking and that he "had drunk a few that day." From his observations at the scene of the accident and the Defendant's answers to his questions, Officer Lewis determined that the Defendant "was under the influence of alcohol."

Officer Lewis testified that after talking with the Defendant, he called the dispatcher, who told him that the Defendant was a motor vehicle habitual offender and that the Defendant's driver's license was revoked. Officer Lewis said that he also obtained a certified copy of the Defendant's driving history, which also reflected that the Defendant was a motor vehicle habitual offender. The Defendant's driving history was introduced into evidence.

Officer Lewis said that he was unable to transport the Defendant to the emergency room or the jail because as a "K-9 officer," his dog was in the back seat of his vehicle. Officer Lewis testified that he was able to call another deputy, who transported the Defendant to the jail. Once at the jail, the Defendant requested to go to the hospital. The deputy complied, and Officer Lewis met the Defendant at the hospital. Officer Lewis said that when the Defendant was at the hospital, the Defendant "consented to a blood alcohol test" after Officer Lewis read "him his rights under the implied consent law."

After a nurse at the hospital drew blood from the Defendant's arm, the blood alcohol kit was sent to the Tennessee Bureau of Investigation for testing. Approximately one month later, the test results were sent to Officer Lewis. The test results reflect that the Defendant's blood alcohol content was 0.28 at the time the Defendant's blood was collected. The test results and implied consent form were also introduced into evidence.

Officer Lewis said that the Defendant never told him that somebody else was driving the car or that there were any other passengers. Officer Lewis testified that he believed that the Defendant was "very intoxicated" and that the Defendant should not have been driving that day.

On cross-examination, Officer Lewis admitted that he did not know who called the dispatcher to report the accident; however, he knew that the call was received at 2:55 p.m. Officer Lewis reiterated that the Defendant was outside the car when he arrived at the scene and that the curvy county road was wet. Officer Lewis conceded that it was "not outside the realm of possibility" that the Defendant may have "shifted around in [the] car" when the accident occurred, thereby hitting his left knee on the steering wheel.

On re-direct examination, Officer Lewis stated that he was able to determine that the Defendant owned the car. He said that the accident occurred when the vehicle "came around the curve and . . . went off into the ditch and then down a little embankment into a field." The car was "stuck in the field," and the "passenger's side and the front of the vehicle was [moderately] damaged." The vehicle was not upside down and was "facing in the direction in which it came from." The open beer can in the center console was not spilled as a result of the accident, and "[t]here wasn't anything turned over" in the vehicle. Officer Lewis did not see anything in the car that indicated that another person was present.

## ANALYSIS

The Defendant contends that the evidence was insufficient to sustain his convictions. The Defendant admits that he is a habitual motor vehicle offender and that he was intoxicated when Deputy Lewis found him on the side of the road. The Defendant contends that the State failed to prove that the Defendant ever had physical control of the automobile, thereby invalidating both convictions. The State responds that the evidence was sufficient to sustain both convictions.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). "A verdict of guilt removes the presumption of

innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In this case, there was no direct evidence that the Defendant was driving the vehicle. However, "[i]t is well established that circumstantial evidence alone may be sufficient to support a conviction." State v. Richmond, 7 S.W.3d 90, 91 (Tenn. Crim. App. 1999) (citation omitted). To warrant a criminal conviction on circumstantial evidence alone, the evidence "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." State v. Crawford, 470 S.W.2d 610, 612 (1971). This court has held that the evidence "must be not only consistent with the guilt of the accused but it must also be inconsistent with his innocence and must exclude every other reasonable theory or hypothesis except that of guilt." Pruitt v. State, 460 S.W.2d 385, 390 (1970). In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." Crawford, 470 S.W.2d at 613. "The inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." Marable v. State, 313 S.W.2d 451, 457 (1958) (citation omitted).

The Defendant was convicted of DUI in violation Tennessee Code Annotated section 55-10-401. The statute states, in pertinent part:

> (a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:
>
> > (1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system; or

(2) The alcohol concentration in the person's
blood or breath is eight-hundredths of one percent
(.08%) or more.

Tenn. Code Ann. § 55-10-401(a)(1). The Defendant was also convicted of driving after having been declared a MVHO in violation of Tennessee Code Annotated section 55-10-616. The statute states, in pertinent part:

(a) It is unlawful for any person to operate any motor vehicle in this state while the judgment or order of the court prohibiting the operation remains in effect.

(b) Any person found to be an habitual motor vehicle offender under this part who thereafter is convicted of operating a motor vehicle in this state while the judgment or order of the court prohibiting such operation is in effect commits a Class E felony.

Tenn. Code Annotated § 55-10-616(a), (b). For a defendant to be convicted of either of these offenses, the State must prove beyond a reasonable doubt that the Defendant was actually driving a vehicle (or in the case of the DUI statute, was driving or in physical control of a vehicle) at the time the violation allegedly occurred.

In determining whether the Defendant was in physical control of the vehicle we consider "the location of the [D]efendant in relation to the vehicle, the whereabouts of the ignition key, whether the motor was running, the [D]efendant's ability, but for his intoxication, to direct the use or non-use of the vehicle, or the extent to which the vehicle itself is capable of being operated or moved under its own power or otherwise." State v. Lawrence, 849 S.W.2d 761, 765 (Tenn. 1993). "The same considerations can be used as circumstantial evidence that the [D]efendant had been driving the vehicle." Id. We also note that this court has held that in DUI cases, a police officer's testimony, by itself, is sufficient evidence to convict a defendant of driving under the influence. See State v. Vasser, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993) (stating that the State did not need more than the deputy's testimony to prove its DUI case).

While Officer Lewis did not provide any information regarding the location of the car keys or whether the engine was running, Officer Lewis testified that the Defendant was standing outside his vehicle and complaining of an injury to his left knee resulting from a single car accident. Officer Lewis testified that the vehicle belonged to the Defendant. He said that the vehicle was damaged on the passenger's side and the front of the vehicle and that the vehicle was stuck in the field. However, the vehicle was not upside down.

According to Officer Lewis, the Defendant did not mention that another person was driving the vehicle or even that another person was with him in the accident. No other persons were present at the scene of the accident. Accordingly, we conclude that there was sufficient evidence to conclude that the Defendant was driving the vehicle at the time of the accident.

Officer Lewis also said that the Defendant appeared intoxicated and that the Defendant's blood alcohol content was 0.28, well above the legal limit. The Defendant told Officer Lewis that he had consumed a few beers that day, and Officer Lewis observed one beer in the center console. Accordingly, we also conclude that there was sufficient evidence to conclude that the Defendant was under the influence of an intoxicant while he was driving the vehicle and that there was sufficient evidence to sustain a conviction for DUI and MVHO.

CONCLUSION

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE