IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 16, 2006 Session

## STATE OF TENNESSEE v. RICKY SHACKLES
## and CARRIE ANDERSON

**Direct Appeal from the Circuit Court for Claiborne County**
**Nos. 12,587 & 12,588     E. Shayne Sexton, Judge**

**Nos. E2005-00510-CCA-R3-CD - Filed August 7, 2006**
**E2005-00511-CCA-R3-CD**

This is a direct appeal as of right upon a certified question of law. <u>See</u> Tenn. R. Crim. P. 37(b)(2). The Defendants, Ricky Shackles and Carrie Anderson, were both convicted of simple possession of a controlled substance, a Class A misdemeanor, following their entry of a guilty plea. Defendant Shackles received eleven months and twenty-nine days on probation, and Defendant Anderson received eleven months and twenty-nine days on judicial diversion. On appeal, the Defendants claim, pursuant to their reserved certified question, that as occupants of a parked car in a privately owned parking lot, they had a reasonable expectation of privacy which rendered the warrantless search of their car unconstitutional. Because the certified question of law is not dispositive of the Defendants' case, we dismiss this appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

DAVID H. WELLES, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

R. Jackson Rose, Harrogate, Tennessee (at trial); Benjamin S. Pressnell, Tazewell, Tennessee (on appeal); for the Defendants, Ricky Shackles and Carrie Anderson.

Paul G. Summers, Attorney General and Reporter; Leslie Price, Assistant Attorney General; William Paul Phillips, District Attorney General; and Jared Effler, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTS

The facts of this case are not in dispute. According to the testimony presented at the Defendants' motion to suppress hearing, Officer Ben Evans of the Tazwell Police Department was on patrol in the early morning hours of January 25, 2004, when he noticed a "single vehicle setting [sic] in parking lot of the CRS [Clinch River Sportsmen's] Club." Officer Evans, who initially observed two people sitting in the front seat of the vehicle, turned into the parking lot to ascertain why these individuals were in the lot at approximately 4:00 a.m., nearly an hour after the club had closed for business.[1] As he approached, he witnessed Defendant Anderson, in the passenger's side front seat, "slumped over" in a manner that made it appear "she was trying to hide something in the floor board of the car."

Officer Evans testified that "the reason [he] decided to pull into the parking lot to see what they were doing there, after business was closed, [was to] make sure they wasn't [sic] attempting to break in or make sure nobody was injured or sick." Officer Evans first approached Defendant Shackles, who was seated in the driver's seat, and asked Defendant Shackles what they were doing there. Defendant Shackles stated that he and Defendant Anderson worked at the club, they had just finished closing up for the night and they were "fixing to leave." Officer Evans asked Defendant Shackles for identification, which Shackles provided. Officer Evans then walked to the other side of the vehicle and asked Defendant Anderson for identification. While standing by the passenger's side of the car, Officer Evans "noticed a, a kind of a square metal lid type thing, in the floor with some residue on the floor board underneath her, ah, legs there in the front of the passenger side front seat."

Officer Evans further described this residue as "a powder residue" that he recognized from his years of law enforcement experience as a "pill that had been crushed up" so it could be "snort[ed]." Officer Evans asked Defendant Anderson to "lean her head back," she complied, and he observed "residue in, in her nostril." Officer Evans then asked Defendant Shackles to do the same, he complied, and the Officer observed "residue in his nostril" as well. Officer Evans asked Defendant Shackles what the crushed pill was, and Defendant Shackles stated that it was hydrocodone. On cross-examination, Officer Evans admitted that he knew the club was a private club but noted that in the past there had been "several incidents" where the club owners had actually requested his presence on their property.

Both Defendants were indicted by a Claiborne County grand jury on one count of simple possession of a Schedule III controlled substance. See Tenn. Code Ann. § 39-17-418. Both Defendants filed motions to suppress, claiming that the law enforcement officer approached, detained and searched them while they were on private property without "a warrant, probable cause or permission," and therefore the evidence obtained as a result of the search should be suppressed.

---

[1]The record reveals that a third person, not a party to this appeal, was in the back seat of this same vehicle.

A hearing on the Defendants' motions to suppress was conducted on December 16, 2004.[2] On December 22, 2004, the trial court accepted the guilty pleas of both Defendants, recognizing that the Defendants had reserved as a certified question the issue raised in their motions to suppress. On January 19, 2005, the trial court entered judgments against the Defendants, which noted that the Defendants "may certify a question to the Appellate Court regarding the issue raised by the [Defendants] in [their] Motion to Suppress."

The trial court issued an order denying the Defendants' motions to suppress on January 28, 2005. In this order, the trial court found: (1) the Defendants were seized in the parking lot of a private club, (2) the Defendants did not have an "expectation of privacy" in the parking lot of the club because it was open to the public, and (3) the question of whether the Defendants had a reasonable expectation of privacy in the parking lot was dispositive of the case and, by agreement of the State, Defendants and the court, was reserved for appellate review as a certified question. In February of 2005, the trial court entered an "Amendment to the Plea Agreement" to "clearly define the certified question to the Court [o]f Criminal Appeals," which it stated as follows: "the question presented was whether the Defendant[s] had an expectation of privacy while in a parking lot to a private club."[3] Also in February of 2005, the trial court issued orders amending the judgments, which were "prematurely filed" before the order overruling the Defendants' motions to suppress was entered.[4] The Defendants timely filed a notice of appeal.

## ANALYSIS

In conjunction with their guilty pleas, the Defendants reserved the following certified question of law: "whether the Defendant[s] had an expectation of privacy while in a parking lot to a private club?"[5] The State argues in its appellate brief that this appeal should be dimissed because the certified question is not dispositive of the case. We agree with the State.

Our Rules of Criminal Procedure permit a criminal defendant to both plead guilty and appeal a certified question of law if the defendant has entered into a plea agreement under Rule 11(e) of the Tennessee Rules of Criminal Procedure and has "explicitly reserved with the consent of the state and of the [trial] court the right to appeal a certified question of law that is dispositive of the case . . . ."

---

[2]The trial court consolidated the two Defendants' cases at the suppression hearing.

[3]The "Amendment to the Plea Agreement" further stated that "[a]ll parties and the Trial Court further agree that this question is dispositive of the entire case that it may be certified to the Court of Criminal Appeals."

[4]This "Order Amending Judgment" also restated the certified question as whether the Defendants' had an "expectation of privacy" in a privately owned parking lot to a private club that was accessible to the general public.

[5]This phrasing of the certified question is taken from the February 16, 2005 "Amendment to the Plea Agreement." On appeal, the Defendants' have "modified" the question slightly, restating it as follows: "Whether the occupants of a parked car in a privately owned parking lot of a private club, who have the express permission as club employees to be on the premises, have a reasonable expectation of privacy, absent exigent circumstances." However, we are required to address only the certified question as it is stated in "the judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal." Tenn. R. Crim. P. 37(b)(2)(i)(A).

Tenn. R. Crim. P. 37(b)(2)(i). <u>See also</u> <u>State v. Armstrong</u>, 126 S.W.3d 908, 910 (Tenn. 2003). According to our rules, the following requirements must be met:

> (A) The judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, must contain a statement of the certified question of law reserved by defendant for appellate review;
> (B) The question of law must be stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;
> (C) The judgment or document must reflect that the certified question was expressly reserved with the consent of the state and the trial judge; and
> (D) the judgment or document must reflect that the defendant, the state, and the trial judge are of the opinion that the certified question is dispositive of the case[.]

Tenn. R. Crim. P. 37(b)(2)(i). <u>See also</u> <u>State v. Preston</u>, 759 S.W.2d 647, 650 (Tenn. 1988). If these requirements are not met, this Court is without jurisdiction to hear the appeal. <u>See</u> <u>State v. Pendergrass</u>, 937 S.W.2d 834, 837 (Tenn. 1996).

In this case, the record before this Court demonstrates that the Defendants met the first requirement to certify a question of law. Contrary to the State's argument, we believe the question, as it is raised by the Defendants, was reserved in the record. While the judgment forms themselves only note that a certified question was reserved and do not restate the question, both the amended plea agreement and the order amending the judgment do "contain a statement of the certified question." Tenn. R. Crim. P. 37(b)(2)(i)(A).

We are unable to conclude that the question "clearly" defines the scope and limits of the legal issue reserved. The question was limited in scope to whether or not the Defendants had an expectation of privacy in their parked car in a private parking lot. The "question" is stated somewhat differently in three separate "orders" setting forth the certified question. Contrary to the State's argument, we do not think it a fatal flaw that the phrase "expressly reserved" was not in the record. The plea agreement forms, judgments, amended plea agreement and order amending judgment all sufficiently convey that it was the desire of the Defendants, with the approval of the State and the trial court, to reserve a certified question for appellate review as part of their plea agreement. However, we conclude that the question reserved for review by this Court is not dispositive of the case.

Although Rule 37 requires that the parties and the trial judge be of the opinion that the certified question is dispositive of the case, and the record in this case reflects that all three were in such agreement, "[t]his Court is not bound by the determination and agreement of the trial court, a defendant, and the State that a certified question of law is dispositive of the case." <u>State v. Thompson</u>, 131 S.W.3d 923, 925 (Tenn. Crim. App. 2003); <u>see also</u> <u>State v. Oliver</u>, 30 S.W.3d 363, 364 (Tenn. Crim. App. 2000). Furthermore, this Court may not assume jurisdiction of a case based upon an agreement between the litigants and the trial court. <u>See</u> <u>State v. Wilkes</u>, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984). "Rather, we are required to make an independent determination of the

dispositive nature of the question reserved, and appellate review must be denied if the record does not clearly demonstrate how the question is dispositive." Oliver, 30 S.W.3d at 364. See also Preston, 759 S.W.2d at 651. The question is dispositive when its determination requires that we either affirm or reverse and dismiss the convictions at issue. See Oliver at 364.

Given the benefit of the doubt, the Defendants' certified question in this case can be summarized as whether their convictions must be reversed and dismissed because the search and seizure resulting in the discovery of the controlled substance was illegal, considering that the Defendants had an expectation to privacy in their vehicle parked on private property. If so, all evidence gathered as a result of the search and seizure is inadmissible under the exclusionary rule. However, under the facts of this case, whether the Defendants enjoyed an expectation of privacy while parked on private property is not dispositive of whether Officer Evans' encounter with the Defendants violated any of their constitutional rights and thereby merits suppression of the evidence against them. As such, the Defendants' appeal must fail.

We begin our analysis by acknowledging that both the Fourth Amendment to the United States Constitution and article 1, section 7 of the Tennessee Constitution prohibit "unreasonable searches and seizures."[6] The intent and purpose behind these constitutionally protected rights is to "safeguard the privacy and security of individuals against arbitrary invasions of government officials." Camara v. Municipal Court, 387 U.S. 523, 528 (1967).[7] See also State v. Ross, 49 S.W.3d 833, 839 (Tenn. 2001). As a general rule, warrantless searches or seizures are presumed unreasonable, and any evidence discovered thereby is subject to suppression unless the State demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to a narrowly defined exception to the warrant requirement. See Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Garcia, 123 S.W.3d 335, 343 (Tenn. 2003).

Both the state and federal constitutional protections are "implicated only when a police officer's interaction with a citizen impermissibly intrudes upon the privacy or personal security of the citizen." Ross, 49 S.W.3d at 839. The Defendants assert in their certified question and on appeal

---

[6]The Fourth Amendment to the United States Constitution provides as follows:

> Unreasonable searches and seizures. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article 1, section 7 of the Tennessee Constitution guarantees that:

> the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

[7]The intent and purpose of the prohibitions against unreasonable searches and seizures found in the Tennessee Constitution has been found to be the same as that behind the provision found in the Fourth Amendment to the United States Constitution. See State v. Simpson, 968 S.W.2d 776, 779 (Tenn. 1998).

that Officer Evans intruded upon their privacy because they were in a vehicle parked on private property. In their motions to suppress, the Defendants state that they were on private property when the officer "entered the property" and "searched" without permission, warrant or probable cause. Accordingly, it appears from the Defendants' certified question that they are asserting a privacy right based upon the place of the police-citizen interaction: their personal vehicle in a parking lot on private property. However, the "rights assured by the Fourth Amendment are personal rights . . . ." Ross, 49 S.W.3d at 840. Moreover, this Court has previously held that arguments challenging searches of vehicles merely because they were parked on private property at the time are "misguided." State v. Hawkins, 969 S.W.2d 936, 938 n.1 (Tenn. Crim. App. 1997). This is so because the Fourth Amendment "protects people not places." Id. Accordingly, the real issue is whether the Defendants' rights to be free from unreasonable searches and seizures were violated.

The Defendants allege in their motion to suppress, and the trial court held in its order denying the motions to suppress, that Officer Evans "detained" or "seized" the two Defendants. We conclude that the record does not support a finding that the Defendants were seized prior to the discovery of the controlled substance at issue. Before the constitutional protections against an unreasonable seizure are triggered, there must be an actual seizure. Our courts have recognized three types of police-citizen interactions: (1) a full scale stop and arrest, which must be supported by probable cause, see Whren v. United States, 517 U.S. 806, 809-10 (1996); (2) a brief investigatory stop, which must be based on reasonable suspicion supported by specific and articulable facts, see Terry v. Ohio, 392 U.S. 1, 20-23 (1968); and (3) a brief police-citizen encounter, which requires no objective justification, see United States v. Drayton, 536 U.S. 194, 201-02 (2002). See also State v. Daniel, 12 S.W.3d 420, 424 (Tenn. 2000). Of the three categories, only the first two rise to the level of a "seizure" for constitutional analysis purposes.

In this case, the circumstances show only a brief police-citizen encounter. The officer, seeing a lone vehicle parked in a club parking lot nearly an hour after closing, approached the vehicle and inquired who the occupants were and why they were there. Our supreme court has held that an "officer may approach an individual in a public place and ask questions without implicating constitutional protections." Daniel, 12 S.W.3d at 425. The facts in this case indicate that the vehicle was in a parking lot that, while private property, was nonetheless open to the public. The record further reveals that Officer Evans' initial approach of the Defendants' vehicle and innocuous questioning did not amount to a seizure and therefore no constitutional implications arose during this initial encounter. See id., at 427 (holding that "merely approaching the defendant, inquiring what was going on, and asking to see [the defendant's] identification did not constitute a seizure as that term is defined in the constitutional context.").

Neither the Fourth Amendment nor our state constitutional provisions governing searches and seizures protects what a citizen knowingly exposes to the public. State v. Bowling, 867 S.W.2d 338, 341 (Tenn. Crim. App. 1993). Furthermore, this Court has held that what a citizen knowingly exposes to the public is not that which he or she has manifested a subjective expectation of privacy. Id. See also State v. Norris, 47 S.W.3d 457, 464 (Tenn. Crim. App. 2000). Indeed, as noted above, such casual police-citizen interaction have been consistently held not to implicate Fourth

Amendment concerns. It matters not that the parking lot was on private property. This Court has stated that a person has "no greater expectation of privacy on another's property than he or she would on a public road." Hawkins, 969 S.W.2d at 938 n.1. Accordingly, the evidence contained in the record on appeal reveals the Defendants were not entitled to a reasonable expectation of privacy. Nonetheless, even if the facts of this case supported the Defendants' assertion that they had a reasonable expectation of privacy while in their car on private property, such a holding would not be dispositive of the case.

As already noted, regardless of the Defendants' expectation of privacy, the officer's initial approach was a casual police-citizen encounter and was therefore constitutionally permissible. The question which remains is whether the warrantless search that resulted in the seizure of the evidence the Defendants desire suppressed was a legal search. Whether the search was legal, under the "plain view" doctrine, or because of "exigent circumstances" involving the search of an automobile, or perhaps for other reasons, is simply not within the scope of the certified question reserved.

Regardless of the Defendants' privacy expectations, the officer's initial approach and casual conversation was a mere police-citizen encounter that never implicated Fourth Amendment protections. These actions by the police would have been lawful under these circumstances even if we agree with the Defendants that they had "an expectation of privacy while in a parking lot to a private club." Accordingly, the Defendants' certified question of law is not dispositive of their case, and we are therefore without jurisdiction to entertain it.

## CONCLUSION

Having failed to preserve a certified question that is dispositive of their case, the Defendants' appeal is dismissed.

_____
DAVID H. WELLES, JUDGE

-7-