# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs at Knoxville April 23, 2013

## STATE OF TENNESSEE v. FORREST MELVIN MOORE, JR.

**Appeal from the Criminal Court for Davidson County**
**No. 2011-C-2035   Mark J. Fishburn, Judge**

_____

### No. M2012-02059-CCA-R3-CD - Filed July 25, 2013

_____

The Defendant, Forrest Melvin Moore, Jr., was convicted at a bench trial of second offense driving under the influence (DUI) and second offense DUI while his blood alcohol concentration was .20% or more, Class A misdemeanors. *See* T.C.A. § 55-10-401 (2012). He was sentenced to eleven months and twenty-nine days, with forty-five days to be served. On appeal, he contends that the trial court erred in denying the motion to suppress and that the evidence is insufficient to support the convictions. We affirm the Defendant's convictions but vacate the judgments and remand the case for entry of a single judgment noting merger of the two offenses.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Vacated; Case Remanded**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Michael J. Flanagan, Nashville, Tennessee, for the appellant, Forrest Melvin Moore, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Michelle Consiglio-Young, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Grover Christopher Collins, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At the trial, Metro Nashville Police Sergeant Mitch Kornberg testified that he was on patrol on July 5, 2010, when he saw a mailbox on a lawn and a hole where the mail box's post had been. After a conversation with the homeowner, Donald Draper, he drove around a corner to investigate a hit and run incident and possible vandalism. He said he saw the Defendant walking beside a white pickup truck parked at a house. He approached the

Defendant and asked him if he had been driving the truck. He said the Defendant, who staggered and had blootshot eyes, admitted driving. He said no one was inside the truck. He noticed body damage to the front driver's side of the truck. The truck was warm when he felt it, which led him to conclude that it had been driven recently. He said that as he continued talking to the Defendant, he observed extremely slurred speech, bloodshot and watery eyes, and an odor of alcohol. He said that at this point, he shifted his focus from the hit and run investigation to a DUI investigation.

Sergeant Kornberg testified that his patrol car was parked on the street and did not block the Defendant from leaving. He said he did not activate the car's blue lights. He did not tell the Defendant to stop or make any commands. Although he did not recall the Defendant's exact words, he said that when he asked the Defendant if he had been driving, the Defendant stated that he could not lie to the police and that he had been driving. He said that when he asked the Defendant if the Defendant had been drinking, the Defendant admitted drinking six to eight beers. He said that the Defendant agreed to take field sobriety tests. He said that as they walked to the street for the tests, the Defendant stumbled and Sergeant Kornberg caught him to prevent him from falling. He said that as he explained the tests, the Defendant lost his balance and fell to the ground. He said he did not administer the field sobriety tests because the Defendant was a danger to himself. He said he got the Defendant off the ground, handcuffed him, and put him into his patrol car.

Sergeant Kornberg testified that he took the Defendant to police headquarters and that he gave the Defendant another chance to perform the field sobriety tests but that the Defendant was unable to perform them. He said that the Defendant agreed to take a breathalyzer test and that the result was .209% blood-alcohol content. He said the Defendant belched during the test and that he restarted the test for this reason.

Sergeant Kornberg testified that he was unaware of any call about the accident being made to the police dispatchers. He thought he arrived at the scene within seconds, before anyone could call. He said it took him seconds to travel from the scene to the location he saw the Defendant.

The State offered as an exhibit the judgment for the Defendant's prior DUI conviction. The trial court found the Defendant guilty of second offense DUI and second offense DUI by having .20% or more of alcohol in his blood. The court found the Defendant not guilty of failure to locate and notify the owner of a fixture or property damaged by a motor vehicle. The court sentenced the Defendant to eleven months, twenty-nine days for each conviction, with forty-five days to be served. The Defendant filed this appeal.

**I**

The Defendant contends that the trial court erred in denying his motion to suppress because there was insufficient proof that he was involved in a traffic accident or that he drove the truck after consuming alcohol. The State contends that this is not the precise basis upon which the Defendant sought to suppress the evidence in the trial court and that in any event, the court correctly denied the motion. We conclude that the trial court did not err in denying the motion to suppress.

An appellate court may consider the evidence presented at the suppression hearing as well as at the trial in determining whether the trial court properly denied a pretrial motion to suppress. *State v. Henning*, 975 S.W.2d 290, 297-99 (Tenn. 1998). A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996); *State v. Jones*, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. The application of the law to the facts as determined by the trial court is a question of law which we review de novo on appeal. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and "article 1, section 7 of the Tennessee Constitution is identical in intent and purpose with the Fourth Amendment." *State v. Downey*, 945 S.W.2d 102, 106 (Tenn. 1997) (citation omitted). In *State v. Williams*, 185 S.W.3d 311, 315 (Tenn. 2006), our supreme court outlined the three types of encounters between the authorities and citizens and defined the applicable legal standard for each:

> Not all contact between police officers and citizens involves the seizure of a person under the Fourth Amendment of the United States Constitution or Article I, section 7 of the Tennessee Constitution. Courts have recognized three distinct types of police-citizen interactions: (1) a full scale arrest which must be supported by probable cause, *see United States v. Watson*, 423 U.S. 411, 424, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976); (2) a brief investigatory detention which must be supported by reasonable suspicion of criminal activity, *see Terry v. Ohio*, 392 U.S. 1, 27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); and (3) a brief "consensual" police-citizen encounter which requires no objective justification, *see Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991). This last category includes community caretaking or public safety functions. *See Cady v. Dombrowski*, 413 U.S. 433,

441, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973); *State v. Hawkins*, 969 S.W.2d 936, 939 (Tenn. Crim. App. 1997).

The Defendant's motion to suppress contended that the evidence related to the Defendant's arrest and admissions should be suppressed because (1) Sergeant Kornberg illegally detained the Defendant on the Defendant's property, (2) Sergeant Kornberg failed to advise the Defendant of his *Miranda* rights before questioning him about driving, and (3) the alleged offense was a misdemeanor and was not committed in Sergeant Kornberg's presence.

At the suppression hearing, Donald Draper testified that on July 5, 2010, a neighbor came to his house and told him that someone had run over his mailbox and that the neighbor told him the direction the person traveled and the type of vehicle the person drove. Mr. Draper said that as he was preparing to get into his car, he saw a passing police officer and waved at him. He relayed the information to the officer, who went in one direction around the circular road in the neighborhood while he went in the opposite direction. He said his house was on the corner at the entrance to the circular drive. He said that as he drove, he saw the Defendant getting out of a vehicle in the Defendant's driveway. He said the Defendant "could hardly walk." He said the Defendant's driveway was about 100 yards from his mailbox. He said that the officer approached from the opposite direction and that he told the officer the Defendant was the person who hit his mailbox. He did not hear any conversation between the Defendant and the police officer.

Mr. Draper testified that the following evening, the Defendant came to his house and paid him $120 for the mailbox. He said the Defendant stated, "I shouldn't have been drinking and driving, I just wanted to come by and pay for the damages." He said the mailbox was destroyed and the post was broken.

On cross-examination, Mr. Draper testified that he saw the Defendant almost daily. He agreed he did not see the Defendant hit the mailbox. He said the neighbor who alerted him to the damage did not tell him the police had been called. He said the neighbor told him that the person who hit the mailbox was driving a white Ford pickup truck and indicated the direction the person traveled. Mr. Draper did not know where the neighbor was when Mr. Draper stopped the police officer. He did not know if the neighbor talked to the officer. He estimated his conversation with the officer took about ten seconds. He said he and the officer did not discuss traveling in opposite directions on the circular street. He said it took him about five seconds to drive to the Defendant's house. He said the truck the Defendant was leaving was white. He said he got out of his car and said, "You're drunk, you just hit my mailbox, stay right there." He said the officer came down the street as he got out of his car.

He said that before he left, he walked to the front of the truck and saw a mark on the passenger's side of the bumper.

Sergeant Kornberg testified that he was patrolling on July 5, 2010, when Mr. Draper flagged him down and told him a white pickup truck struck Mr. Draper's mailbox and turned right onto Carl Place, a circular street. He said that he went the same direction as the truck had traveled and that Mr. Draper went the opposite way. He said he stopped in front of a house where he saw Mr. Draper stopped. He said that a white pickup truck was in the driveway and that the Defendant stood next to the driver's door.

Sergeant Kornberg testified that he walked up the driveway and asked the Defendant if he had been driving the truck. He said the Defendant stated that he was not going to lie and that he had been driving. Sergeant Kornberg said that the truck's engine was still warm and that the truck had damage to the front that was consistent with hitting a mailbox. He said that when he walked up the driveway, he was investigating "a hit and run of a mailbox" but that he noticed signs of intoxication and shifted his focus to investigating a DUI. He said the Defendant appeared "extremely intoxicated," had a "stuporous look," had bloodshot, watery eyes, had very slurred and sometimes incoherent speech, and smelled of alcohol. He said that he asked the Defendant if he had been drinking and that the Defendant admitted he had six or eight beers. He said that the Defendant consented to field sobriety tests, that he led the Defendant to the street where the ground was level, that the Defendant stumbled, that he caught the Defendant, that the Defendant stumbled a second time and fell to the ground, and that he did not administer the tests for the Defendant's safety. He said the driveway was rocky. He said he arrested the Defendant for DUI. He said he did not read the Defendant his *Miranda* rights or question him about driving under the influence.

Sergeant Kornberg testified that during his encounter with the Defendant, he wore his police uniform and drove a patrol car. He denied giving the Defendant commands or displaying weapons or handcuffs. He said he did not go inside a gate or fence and that the front yard was open. He said that he parked his car on the street and that the Defendant's truck was not blocked in the driveway by his car.

On cross-examination, Sergeant Kornberg testified that he did not see the Defendant drive or physically control a vehicle on a public road. He agreed the Defendant's driveway was private property. He said his conversation with Mr. Draper took a few seconds. He said that the area had flooded recently and that there were not many vehicles present. He thought that when he arrived at the Defendant's house, Mr. Draper was pointing and said, "[T]hat's him[,]" or something similar. He said that based upon the white truck's presence around the corner from where the mailbox was hit, he had reasonable suspicion that the Defendant was the person who hit the mailbox. He agreed he did not give the Defendant the *Miranda*

admonitions before questioning the Defendant about whether he had driven. He said he touched the hood of the truck and thought he did it after the Defendant said he admitted driving. On redirct examination, he said the only access from Mr. Draper's mailbox to the Defendant's driveway was via Carl Place, a public roadway.

The trial court found that Sergeant Kornberg engaged the Defendant in a consensual police-citizen encounter, that no show of force was used, and that evidence supported a conclusion that nothing would lead the Defendant to believe he was not free to leave. The court found that due to the Defendant's admission that he drove the truck and that he drank, the truck's warm hood, the Defendant's "confused" speech, and the damage to the front end of the truck, Sergeant Kornberg had reasonable suspicion based upon specific and articulable facts that the Defendant may have struck the mailbox while driving under the influence and that the officer had justification to detain the Defendant briefly for investigation. The court also found that Sergeant Kornberg had probable cause to arrest the Defendant for leaving the scene of an accident while violating the DUI statute and that the arrest for the misdemeanor committed outside the officer's presence was permitted by Tennessee Code Annotated section 40-7-103(a)(10) (permitting the warrantless arrest of a driver involved in a traffic accident who leaves the scene, is apprehended within four hours, and for whom an officer has probable cause to believe was in violation of T.C.A. § 55-10-401, the DUI statute). The court also found that relative to the Defendant's inculpatory statements, *Miranda* warnings were not required because the consensual police-citizen encounter did not involve a seizure or detention of the Defendant at the time of the statements. The trial court denied the motion to suppress.

On appeal, the Defendant contends that the evidence preponderates against the trial court's findings that the proof showed that the Defendant was involved in a traffic accident or that he drove the truck after consuming alcohol. The State contends that this is not the precise basis upon which the Defendant sought suppression of the evidence in the trial court. We interpret the Defendant's appellate issue to relate to the factual conclusions drawn by the trial court, which in turn supported its legal conclusions, and we will consider it as such.

The evidence reflects that Sergeant Kornberg was investigating the cause of the damage to the mailbox when he encountered the Defendant, who was in his driveway in an open front yard. Sergeant Kornberg approached the Defendant in furtherance of his investigation relative to the mailbox, observed signs of intoxication, and received information that caused him to begin a DUI investigation. Sergeant Kornberg did not block the Defendant from leaving, did not order the Defendant to stay, and did not display weapons or show any force. The officer spoke briefly to the Defendant, and the Defendant answered the officer's questions. We conclude, as did the trial court, that this was a consensual police-citizen encounter that did not require objective justification. *See Bostick*, 501 U.S. at 434;

*Williams*, 185 S.W.3d at 315; *see also State v. Cothran*, 115 S.W.3d 513, 522 (Tenn. Crim. App. 2003) ("A sidewalk or pathway leading from a public street to the front door of a residence represents an 'implied invitation' to the public to use the pathway in pursuing legitimate business or social interests with those inside the residence."); *State v. Harris*, 919 S.W.2d 619, 623 (Tenn. Crim. App. 1995). Because the Defendant was not the subject of custodial interrogation, *Miranda* warnings were not required. *Miranda v. Arizona*, 384 U.S. 436, 478 (1966); *State v. Walton*, 41 S.W.3d 75, 82, (Tenn. 2001).

As the trial court noted, Tennessee Code Annotated section 40-7-103(a)(10) (Supp. 2011) (amended 2012) provides that an officer may make a warrantless arrest of a person "[w]ho is the driver of a motor vehicle involved in a traffic accident, who leaves the scene of the accident, who is apprehended within four (4) hours of the accident, and the officer has probable cause to believe the driver has violated § 55-10-401 [the DUI statute]." The evidence reflects that Sergeant Kornberg found the Defendant moments after the Defendant hit Mr. Draper's mailbox and left the scene. Sergeant Kornberg recognized signs of intoxication in the Defendant, and the Defendant admitted to drinking and driving. The hood of the Defendant's truck was still warm, and body damage consistent with striking the mailbox was evident on the front of the truck. The trial court did not err in concluding that Sergeant Kornberg had probable cause to make a warrantless arrest of the Defendant for DUI.

**II**

The Defendant contends that the evidence is insufficient to support his convictions because the State did not offer any proof of when or where the Defendant drove and failed to establish that he drove while he was under the influence of alcohol. The State contends that the evidence supports the trial court's determination. We agree with the State.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not reweigh the evidence but presume that the trier of fact has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. *See State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility are resolved by the jury. *See State v. Bland*, 958 S .W.2d 651, 659 (Tenn. 1997).

"'A crime may be established by direct evidence, circumstantial evidence, or a combination of the two.'" *State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005) (quoting *State*

*v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998)). Circumstantial evidence alone may be sufficient to support a conviction. *State v. Richmond*, 7 S.W.3d 90, 91 (Tenn. Crim. App. 1999); *State v. Buttrey*, 756 S.W.2d 718, 721 (Tenn. Crim. App. 1988). The standard of proof is the same, whether the evidence is direct or circumstantial. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). Likewise, appellate review of the convicting evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *Id.* (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In the light most favorable to the State, the evidence demonstrates that Sergeant Kornberg found the Defendant beside a warm truck, indicating it had been driven recently. The Defendant admitted that he drove the truck and that he drank six to eight beers. Sergeant Kornberg arrived at the scene within seconds, and he traveled within seconds to the location where he found the Defendant. The Defendant had bloodshot and watery eyes, an odor of alcohol, and slurred speech. No other person was in the truck. The evidence is sufficient to show that the Defendant drove while under the influence of an intoxicant. He is not entitled to relief.

### III

We note as a matter of plain error that the trial court filed two judgments of conviction, one for second-offense DUI in Count 1, and one for second-offense DUI *per se* in Count 2. When a Defendant is convicted under alternative theories, "a merger and imposition of a single judgment of conviction protects against double jeopardy and preserves the validity of the jury verdicts for future avoidance of problems related to unnecessarily dismissed 'charges' or 'convictions.'" *State v. Addison*, 973 S.W.2d 260, 267 (Tenn. Crim. App. 1997); *see also State v. Howard*, 30 S.W.3d 271, 275 (Tenn. 2000). The trial court should have merged the convictions and entered a single judgment of conviction. For this reason, we vacate the convictions and remand the case for entry of a single judgment of conviction, noting merger of Counts 1 and 2.

In consideration of the foregoing and the record as a whole, the convictions are affirmed, but the judgments are vacated and the case is remanded for entry of a single judgment.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE